UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

CHRISTOPHER GUNN and LINDA GUNN, )
)
*Plaintiffs*, )
) No. 1:19-cv-01385-JMS-MPB
*vs.* )
)
THRASHER, BUSCHMANN & VOELKEL, P.C., )
)
*Defendant*. )

**ORDER**

After Plaintiffs Linda and Christopher Gunn allegedly failed to pay certain homeowners association fees, the homeowners association retained Defendant Thrasher, Buschmann & Voelkel ("TBV"), a collection agency and law firm, to collect the debt. TBV then sent a collection letter to the Gunns, which the Gunns claim contains statements that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e, ("FDCPA"). Presently pending before the Court are TBV's Rule 12(b)(6) Motion to Dismiss Amended Complaint, [Filing No. 26], the Gunns' Motion for Leave to Respond to New Matter In Defendant's Reply In Support of Motion to Dismiss First Amended Complaint, [Filing No. 34], and TBV's Objection to Plaintiffs' Motion for Leave to File Surreply and Motion to Strike Same, [Filing No. 36], all of which are ripe for the Court's decision.

**I.**
**STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim that does not state a right to relief. The Federal Rules of Civil Procedure require that a complaint provide the defendant with "fair notice of what the…claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as

true and draw all permissible inferences in favor of the plaintiff. *See Active Disposal Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). A Rule 12(b)(6) motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The Court will not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief. *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## II.
### BACKGROUND

The following are the factual allegations in the Amended Complaint – the operative complaint in this case – which the Court must accept as true at this time.

The Gunns live in Fishers, Indiana. [Filing No. 18 at 2.] TBV is a law firm which regularly engages in the collection of consumer debts for others. [Filing No. 18 at 2.] On July 16, 2018, TBV sent a letter to the Gunns (the "Letter"), which stated in relevant part:

> Please be advised that this law firm has been retained by Hamilton Proper Community Association, Inc. (hereinafter "Creditor") to collect this debt. The principal and interest amount of the debt owed is presently $1,944.40. If Creditor is a landlord or a homeowner or condominium owner association, principal and interest may continue to accrue from the date of debt in accordance with the applicable lease, declarations, or other documents. If this is a landlord-tenant matter, Creditor may also seek eviction or ejection. If Creditor has recorded a mechanic's lien, covenants, mortgage, or security agreement, it may seek to foreclose such mechanic's lien, covenants, mortgage, or security agreement.

[Filing No. 18-1 at 2.]

Subsequently, TBV initiated a small claims lawsuit against the Gunns in Hamilton Superior Court on October 3, 2018. [Filing No. 18-2 at 2-3.] Six months later, on April 5, 2019, the Gunns filed this putative class action against TBV, and filed the operative Amended Complaint on June 24, 2019. [Filing No. 1; Filing No. 18.]

In the Amended Complaint, the Gunns focus on the statements in the Letter that "If this is a landlord-tenant matter, Creditor may also seek eviction or ejection. If Creditor has recorded a mechanic's lien, covenants, mortgage, or security agreement, it may seek to foreclose such mechanic's lien, covenants, mortgage, or security agreement." [Filing No. 18 at 3.] They allege that the Letter violates 15 U.S.C. §§ 1692e, 1692e(2), 1692e(4), 1692e(5), and 1692e(10) by "refer[ring] to remedies which TBV is not entitled to invoke and did not intend to invoke with respect to the particular debt." [Filing No. 18 at 4.]

TBV has moved to dismiss the Gunns' Amended Complaint, [Filing No. 26], and the Gunns have filed a Motion for Leave to Respond to New Matter In Defendant's Reply In Support of Motion to Dismiss First Amended Complaint, [Filing No. 34]. Additionally, TBV has objected to, and moved to strike, the Gunns' Motion for Leave, [Filing No. 36].

### III.
#### DISCUSSION

**A. The Gunns' Motion for Leave and TBV's Motion to Strike**

At the outset, the Court will consider the Gunns' Motion for Leave to respond to allegedly new matter that they argue TBV included in its reply, which is essentially a motion for leave to file a surreply.

In their Motion for Leave, the Gunns argue that TBV's September 3, 2019 Reply in Support of Attorney Defendants' Rule 12(b)(6) Motion to Dismiss Amended Complaint set forth "entirely new theories asserted for the first time." [Filing No. 34 at 1.] The Gunns contend that TBV has

asserted new legal theories in two ways. First, they claim that TBV's assertion that the Gunns' allegations are "conclusory" constitutes a new legal theory because TBV had not made that allegation before. [Filing No. 34 at 1.] Second, the Gunns argue that TBV's citation of new case law is a new legal theory to which the Gunns should be granted leave to respond. [Filing No. 34 at 2.]

TBV argues in its Motion to Strike that these are not "entirely new theories" at all, but rather reiterations of the same arguments made throughout the case. [Filing No. 36 at 1.] First, TBV contends that it has made the "conclusory" argument before, including when discussing the heightened pleading standards under *Twombly* and *Iqbal* in its Brief in Support of its Motion to Dismiss. [Filing No. 36 at 2.] TBV then points out that citing new case law is not the same thing as asserting new legal theories, and that TBV only cited new case law to counteract the Gunns' "misplaced reliance" on another case. [Filing No. 36 at 3.] Finally, TBV argues that the Gunns' Motion for Leave should be struck from the record due to the Gunns' improper inclusion of substantive arguments in the Motion. [Filing No. 36 at 5.]

Although the Gunns requested leave to reply to "new theories," they included their arguments in the Motion for Leave itself. [Filing No. 34 at 1-3.] While this is not an invitation for future parties before this Court to include substantive arguments in the Motion itself, the Court will treat the Motion for Leave as a surreply and consider the arguments that the Gunns have presented. Accordingly, the Court **GRANTS** the Gunns' Motion for Leave, [Filing No. 34], to the extent that it considers the arguments included in the Motion. The Court also **OVERRULES** TBV's Objection to the Gunns' Motion for Leave and **DENIES** its Motion to Strike the Motion for Leave. [Filing No. 36.]

### B. TBV's Motion to Dismiss

In its Motion to Dismiss, TBV argues that the statement "If Creditor has recorded a mechanic's lien, covenants, mortgage, or security agreement, it may seek to foreclose such mechanic's lien, covenants, mortgage, or security agreement" is a correct statement of Indiana law, so it may not provide the basis for an FDCPA claim. [[Filing No. 27 at 6-7](#).] TBV contends that the Gunns urge the Court to ignore the word "if" at the beginning of the statement in the Letter. TBV argues that the Letter does not violate Section 1692e(2) of the FDCPA because it "accurately identified the character, amount, and legal status of the debt that the Gunns owed." [[Filing No. 27 at 7](#).] It further asserts that the Letter does not violate Sections 1682e(4) or (5) because it "did not represent that a lien had been filed on the Gunns' property, did not threaten to foreclose on the Gunns' property, and did not state that they intended to foreclose," but rather simply stated that if a lien was filed on the property, foreclosure was a possible remedy. [[Filing No. 27 at 8](#).] Finally, TBV argues that the Letter does not violate Section 1692e(10) because the Letter does not constitute a false or deceptive means to collect a debt. [[Filing No. 27 at 8](#).]

In their response, the Gunns argue that the statement that the creditor may seek to foreclose on covenants on their property was an action that would not be, or was unlikely to be, taken and therefore violated the FDCPA. [[Filing No. 32 at 6](#).] The Gunns cite to a myriad of cases, and state that "[h]ere, a foreclosure was not practical, TBV did not intend to foreclose, and eventually it filed a small claims action for money damages…. Given these facts, TBV's letter had no business referring to foreclosure, and appending 'if' and 'may' to a statement about harsh action that was not intended does not exculpate." [[Filing No. 32 at 6-9](#).]

In its reply, TBV reiterates its argument that a true statement that is clearly not misleading cannot form the basis for an FDCPA claim. [[Filing No. 33 at 2-3](#).] TBV discusses and attempts

to distinguish cases cited by the Gunns, and argues that if the Letter were considered a violation of the FDCPA, the public policy implications – *e.g.*, compelling debt collectors to make less true and accurate information available to consumers – would be detrimental. [Filing No. 33 at 4-11.]

In their surreply, the Gunns address cases cited by TBV in its reply brief, and argue that some of the cases TBV relies upon are distinguishable because they related to threats of entities other than the defendant to take action. [Filing No. 34 at 1-2.]

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); *see also Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 343 (7th Cir. 1997) ("The FDCPA…was designed to protect against the abusive debt collection practices likely to disrupt a debtor's life"). Section 1692e provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The FDCPA sets forth non-exhaustive examples of conduct that violates this prohibition, such as "[t]he false representation of…the character, amount, or legal status of any debt…." 15 U.S.C. § 1692e(2)(A). Other examples are "[t]he representation or implication that nonpayment of any debt will result in the…seizure, garnishment, attachment, or sale of any property…of any person unless such action is lawful and the debt collector or creditor intends to take such action," "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken," and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(4), (5), (10). Whether a debt collection letter is deceptive or misleading is a question of fact. *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 776 (7th Cir. 2007). Dismissal is

suitable only when "it is 'apparent from a reading of the [debt collection] letter that not even a significant fraction of the population would be misled by it.'" *Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 636 (7th Cir. 2012) (quoting *Taylor v. Cavalry Inv., L.L.C.*, 365 F.3d 572, 574 (7th Cir. 2004)).

"The courts have ruled that the [FDCPA] is intended for the protection of unsophisticated consumers…, so that in deciding whether for example a representation made in a [debt collection] letter is misleading the court asks whether a person of modest education and limited commercial savvy would be likely to be deceived." *Evory*, 505 F.3d at 774. An unsophisticated consumer "isn't a dimwit. She may be 'uninformed, naïve, [and] trusting,'…but she has 'rudimentary knowledge about the financial world,' and is 'capable of making basic logical deductions and inferences.'" *Wahl v. Midland Credit Management, Inc.*, 556 F.3d 643, 645 (7th Cir. 2009). "If a statement would not mislead the unsophisticated consumer, it does not violate the FDCPA – even if it is false in some technical sense." *Id.* at 645-46. Accordingly, to adequately allege a claim under § 1692e, the Gunns must plausibly allege that the language in the Letter was "false, deceptive, or misleading," to an "unsophisticated consumer."

The Court agrees with TBV that the Gunns have failed to state a claim upon which relief may be granted. First, it is undisputed that the statements contained in the Letter are literally true. The Gunns do not dispute that if they were tenants, they might be subject to eviction or ejection from the property. Additionally, under Indiana Code § 32-28-14-8(c), foreclosure is available as a remedy for homeowner associations who have recorded a lien on the property. The Letter did not state that a lien had been filed against the Gunns' property, did not threaten foreclosure, and did not state that TBV intended to take any action that it was not authorized to take. Since the

Letter does nothing but inform the consumer that foreclosure *may* be pursued, it does not contain a false statement.

The Gunns have also failed to sufficiently allege that the Letter was misleading. They claim that TBV had no intention of pursuing foreclosure, first pointing to a Fannie Mae website purporting to show that seeking foreclosure would be economically unwise. Besides the unpersuasive nature of providing a single company's estimate for a routine foreclosure, the Gunns also fail to mention that this website lists these dollar amounts as the *maximum* amount of attorneys' fees that Fannie Mae allows. It is possible that attorneys' fees could be far lower, making the pursuit of foreclosure economically viable. Second, even if the Gunns had established that pursuing foreclosure on a debt this small would be uneconomical, companies sometimes make unwise financial decisions. Simply claiming that a company action would not be economical does not show that the company has no intention of taking that action. And, in any event, the Letter does not state that TBV was planning to pursue foreclosure, but only that if there were liens or covenants, foreclosure may be pursued. That was a true statement, regardless of TBV's intent.

The Gunns cite numerous cases in support of their argument that using conditional language such as "if" or "may" does not insulate a debt collector from liability. But the cases they rely upon are inapposite. For example, the Gunns discuss *Lox v. CDA, Ltd.,* 689 F.3d 818 (7th Cir. 2012), but ignore the fact that *Lox* dealt with a conditional warning of an action that the debt collector did not have a legal right to pursue. *Id.* at 826. In *Lox,* the collection agency stated that if the court awarded judgment in its favor, the court could allow attorneys' fees. However, this statement was false. *Id.* No statute, nor the contract at issue, allowed for attorneys' fees. Therefore, *Lox* stood for the proposition that conditional language does not necessarily shield a defendant from liability when the conditional statement is patently false. The Seventh Circuit made that

clear in *Dunbar v. Kohn*, in which the court limited *Lox's* applicability to cases in which the debt collector implies it can do something which it cannot. *Dunbar v. Kohn,* 896 F.3d 762, 766 (7th Cir. 2018). Here, it is undisputed that the creditor could seek eviction or ejection if there was a landlord-tenant relationship, and could seek to foreclose if it had recorded a covenant on the Gunns' property.

Similarly, the Gunns are misguided in their reliance on *Brown v. Card Service Center* for two reasons. First, *Brown* – which is not binding on this Court in any event – was decided using the "least sophisticated consumer" standard, in which courts judge whether the most uninformed and unsophisticated consumer would have been misled by the statement. *Brown v. Card Ser. Ctr.*, 464 F.3d 450, 453 (3rd Cir. 2006). However, the Seventh Circuit has rejected that standard, instead adopting the "unsophisticated consumer" standard, which calls upon courts to ask whether a significant fraction of the population would be misled. *Gammon v. GC Services Ltd. Partnership*, 27 F.3d 1254, 1260 (7th Cir. 1994). This is a significantly less stringent standard than the one employed in *Brown*. Second, *Brown* was decided before *Twombly and Iqbal* reshaped pleading standards. Under the standard that the Third Circuit employed in reversing the district court's decision to dismiss the plaintiff's complaint, a complaint could only be dismissed "if it is clear that no relief could be granted under any set of facts that could be proved with the allegations." *Brown,* 464 F.3d at 456. However, after *Twombly and Iqbal*, plaintiffs need only state a claim to relief that is "plausible on its face." *Ashcroft*, 556 U.S. at 678) (quoting *Twombly,* 550 U.S. at 570). Other cases the Gunns rely upon are similarly unavailing, and are not binding on this Court in any event. *See, e.g.*, *Nance v. Friedman*, 2000 WL 1700156 (N.D. Ill. 2000) (letter explicitly threatened legal action by referring to the possibility of initiating litigation multiple times); *Rosa v. Gaynor*, 784 F.Supp. 1 (D. Conn. 1989) (letter threatened litigation even though defendant was not admitted to

practice in the relevant state and was not yet authorized to file suit, and letterhead and signature misrepresented the source of the letter, among other things).

In sum, the Gunns have failed to allege facts showing that the Letter violates § 1692e. The statements at issue are true, and would not plausibly deceive or mislead even the unsophisticated consumer. The Gunns have therefore failed to state a claim under 15 U.S.C. § 1692e upon which relief may be granted, and TBV's Motion to Dismiss is **GRANTED**.

## IV.
### CONCLUSION

For the foregoing reasons, the Court:

- **GRANTS** TBV's 12(b)(6) Motion to Dismiss Amended Complaint, [26];

- **GRANTS** Plaintiffs' Motion for Leave to Respond to New Matter In Defendant's Reply In Support of Motion to Dismiss First Amended Complaint, [34]; and

- **OVERRULES** TBV's Objection to Plaintiffs' Motion for Leave to File Surreply and **DENIES** its Motion to Strike Plaintiffs' Motion for Leave to File Surreply, [36].

Final judgment shall enter accordingly.

Date: 11/12/2019

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**