UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHRISTOPHER GUNN and LINDA GUNN, | ) |
| *Plaintiffs*, | ) ) ) No. 1:19-cv-01385-JMS-MPB |
| *vs.* | ) ) |
| THRASHER, BUSCHMANN & VOELKEL, P.C., | ) ) |
| *Defendant*. | ) |

# ORDER

Plaintiffs Linda and Christopher Gunn initiated this action against Defendant Thrasher, Buschmann & Voelkel, P.C. ("TBV"), a collection agency and law firm, after TBV sent a collection letter to the Gunns related to certain homeowners association fees they allegedly owed. The Gunns sued TBV for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e, ("FDCPA"), and on November 12, 2019 the Court granted TBV's Motion to Dismiss and entered final judgment against the Gunns, [Filing No. 38; Filing No. 39].

On November 14, 2019, the Gunns filed a Motion for Reconsideration based on a case decided by the Seventh Circuit Court of Appeals a few days before the Court dismissed this case. [Filing No. 40.] That motion is now fully briefed and ripe for the Court's decision.

## I.
### STANDARD OF REVIEW

Affording relief through granting a motion for reconsideration brought pursuant to Fed. R. Civ. P. 59(e) is an "extraordinary remed[y] reserved for the exceptional case." *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2009). Rule 59 motions are for the limited purpose of "correct[ing] manifest errors of law or fact or…present[ing] newly discovered evidence." *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987) (citation and quotation omitted). "A

'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedtrak v. Callahan*, 987 F.Supp. 1063, 1069 (N.D. Ill. 1997)).

## II.
### BACKGROUND

The following is taken largely from the Court's Order on TBV's Motion to Dismiss, in which the Court set forth the factual allegations in the Amended Complaint, which it was required to accept as true for purposes of the Motion to Dismiss.

The Gunns live in Fishers, Indiana. [Filing No. 18 at 2.] TBV is a law firm which regularly engages in the collection of consumer debts for others. [Filing No. 18 at 2.] On July 16, 2018, TBV sent a letter to the Gunns (the "Letter"), which stated in relevant part:

> Please be advised that this law firm has been retained by Hamilton Proper Community Association, Inc. (hereinafter "Creditor") to collect this debt. The principal and interest amount of the debt owed is presently $1,944.40. If Creditor is a landlord or a homeowner or condominium owner association, principal and interest may continue to accrue from the date of debt in accordance with the applicable lease, declarations, or other documents. If this is a landlord-tenant matter, Creditor may also seek eviction or ejection. If Creditor has recorded a mechanic's lien, covenants, mortgage, or security agreement, it may seek to foreclose such mechanic's lien, covenants, mortgage, or security agreement.

[Filing No. 18-1 at 2.]

Subsequently, TBV initiated a small claims lawsuit against the Gunns in Hamilton Superior Court on October 3, 2018. [Filing No. 18-2 at 2-3.] Six months later, on April 5, 2019, the Gunns filed this putative class action against TBV, and filed the operative Amended Complaint on June 24, 2019. [Filing No. 1; Filing No. 18.]

In the Amended Complaint, the Gunns focused on the statements in the Letter that "If this is a landlord-tenant matter, Creditor may also seek eviction or ejection. If Creditor has recorded a

mechanic's lien, covenants, mortgage, or security agreement, it may seek to foreclose such mechanic's lien, covenants, mortgage, or security agreement." [Filing No. 18 at 3.] They alleged that the Letter violates 15 U.S.C. §§ 1692e, 1692e(2), 1692e(4), 1692e(5), and 1692e(10) by "refer[ring] to remedies which TBV is not entitled to invoke and did not intend to invoke with respect to the particular debt." [Filing No. 18 at 4.]

TBV moved to dismiss the Gunns' Amended Complaint, [Filing No. 26], and the Court granted the motion on November 12, 2019 and entered final judgment the same day, [Filing No. 38; Filing No. 39].

### III.
#### DISCUSSION

The Gunns argue in their Motion for Reconsideration that the Court's decision granting TBV's Motion to Dismiss is inconsistent with the holding of the Seventh Circuit Court of Appeals in *Heredia v. Capital Mgmt. Servs., L.P.*, 942 F.3d 811 (7th Cir. 2019), which was issued four days before this Court's ruling. [Filing No. 40 at 1.] The Court will first summarize the *Heredia* case before addressing the parties' arguments.

In *Heredia*, Capital Management Services, L.P. ("CMS") sent four collection letters to Mabel Heredia, one of which was the focus of the Seventh Circuit's opinion. In that letter, CMS stated:

> In an effort to liquidate as many files as possible, we are making the following settlement offers:
>
> A. 29% reduction of your present balance to the amount of $1343.63, if paid in full on or before 11/30/2016. (A savings of $548.80)
>
> B. 24% reduction of your present balance to the amount of $1438.25. The first payment of $719.13 or more is due on or before 11/30/2016. The second and final payment of $719.12 or more is due on or before 12/30/2016. (A savings of: $454.18)

> C. 19% reduction of your present balance to the amount of $1532.87. The first payment of $510.96 or more is due on or before 11/30/2016. The second payment of $510.96 or more is due on or before 12/30/2016. The third and final payment of $510.95 or more is due on or before 01/30/2017. (A savings of $359.56)
>
> \*     \*     \*
>
> Settling a debt for less than the balance owed may have tax consequences and Discover may file a 1099C form. We cannot provide you with tax advice. If you have any questions, Discover encourages you to consult a tax advisor of your choosing.

*Id.* at 814.

The language that formed the basis for Ms. Heredia's lawsuit was the following: "Discover may file a 1099C form" (the "1099C Clause"). *Id.* The Seventh Circuit noted that the 1099C Clause "does not occur in a vacuum," but "follow[ed] on the heels of the one stating that '[s]ettling a debt for less than the balance owed may have tax consequences'" (the "Tax Consequences Clause"). *Id.* at 814-15. The Seventh Circuit summarized the law by stating that "it is permissible for a creditor to make a 'may' statement if there is any possibility that an event might happen," but "it is impermissible for a creditor to make a 'may' statement about something that is illegal or impossible." *Id.* at 816. Because the creditor would only be required to file a 1099C form if it was forgiving more than $600 in debt, and since the options presented in the letter sent to Ms. Heredia all involved the forgiveness of less than $600 in debt, the Seventh Circuit found that "it is certain that [the creditor] would never file a 1099C form, as the amount of debt CMS was proposing to discharge in each offer was less than $600. [Ms.] Heredia has plausibly alleged that a statement that CMS might file a 1099C form is misleading." *Id.* at 817.

The Gunns argue "[i]n this case, just as in *Heredia*, TBV and its creditor-principal know whether they will seek foreclosure. As in *Heredia*, TBV could use the language in question in those cases (if any) where it intends to seek foreclosure and omit it in those where it does not."

[Filing No. 40 at 3.] The Gunns reiterate their argument made in their Motion to Dismiss that alleging that TBV had no intention of foreclosing or evicting them on such a small debt makes TBV's statement misleading. [Filing No. 40 at 2-3.]

In response, TBV argues that this case is distinguishable from *Heredia* because the decision whether to foreclose is based on a number of factors and TBV, as the collector and not the actual creditor, did not know with certainty whether the creditor would pursue certain remedies. [Filing No. 41 at 4-5.] It contends that the creditor could decide to pursue foreclosure after TBV sent the Letter to the Gunns, so the statement in the Letter was not misleading. [Filing No. 41 at 6.] Finally, TBV argues that the Gunns improperly rely upon information outside of the pleadings, such as its discovery responses. [Filing No. 41 at 6.]

In their reply, the Gunns assert that the Seventh Circuit has "placed the burden on [the debt collector] to know its principal's intentions with respect to the particular debt," so TBV's argument that it did not know whether the creditor would foreclose is unavailing. [Filing No. 42 at 2.] The Gunns also note that in *Heredia* the Seventh Circuit stated that the creditor could have filed the 1099C form, even though not required to do so, but that "the statement [must] be true as to the particular consumer." [Filing No. 42 at 2.] The Gunns defend their reference to TBV's discovery responses in their motion, stating that they may set forth what evidence is consistent with their allegations. [Filing No. 42 at 3.]

The Court finds *Heredia* distinguishable from this case in several ways. First, and most significantly, it is wholly implausible that a creditor would file a 1099C form when it is not required to do so, as was the case in *Heredia*. There is nothing for a company to gain by filing a 1099C form when it is not required to do so. In this case, initiating foreclosure proceedings is a positive for the creditor, since it has an interest in the Gunns' property through covenants. It is

perfectly plausible that the creditor would decide to initiate foreclosure proceedings to protect its interest in the property.

Second, the event that the letter in *Heredia* implies will happen – that the creditor may file a 1099C form – would not actually have any negative consequences for the consumer under the circumstances presented in *Heredia*. The Gunns make much of the fact that the creditor in *Heredia* could still file a 1099C form, even if it is not required to do so. But if the creditor filed the 1099C form, there would have been no consequence whatsoever to Ms. Heredia since the amount forgiven would have been less than $600 under all of the scenarios presented in the letter. No negative tax consequences (*i.e.*, recognition of the forgiven debt as income to the debtor) would have resulted. To state in the letter that the form may be filed, which implies a negative event, was misleading because even if it were filed, there would be no negative consequences to the consumer. Conversely, here, stating that the creditor may seek to foreclose covenants on the Gunns' property is a true statement, and would certainly have negative consequences for the Gunns.

Finally, the Gunns rely on allegations in the Amended Complaint that "[i]n fact, TBV did not intend to file a foreclosure or eviction action on a supposed debt of this small size." [Filing No. 18 at 3.] But the Letter states that the "Creditor" may seek to foreclose, not TBV, the debt collector. Moreover, unlike in *Heredia* where it would have been obvious to even the debt collector that the creditor would not be filing a 1099C form related to Ms. Heredia, here TBV likely did not know whether the creditor would ultimately seek to foreclose. Indeed, the creditor itself may not have known at the time the Letter was sent whether it would ultimately seek to foreclose. The Letter is providing true information about a possibility that "may" occur – unlike

in *Heredia*, where the 1099C Clause provides information about an event that would never plausibly happen.[1]

### IV.
### CONCLUSION

In sum, the Court finds that *Heredia* is significantly distinguishable from this case, and that the Gunns have not shown that the Court committed a "manifest error of law" in granting TBV's Motion to Dismiss. The Gunns' Motion for Reconsideration, [40], is **DENIED**.

Date: 12/23/2019

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

---

[1] The Gunns also argue that the Seventh Circuit applied the "unsophisticated consumer" standard in *Heredia*, and that this Court noted in its dismissal Order that this standard is "significantly less stringent" than the "least sophisticated consumer" standard. [Filing No. 40 at 4.] As in *Heredia*, this Court also applied the "unsophisticated consumer standard," quoting much of the same language from other cases as the Seventh Circuit in *Heredia* did. [*See* Filing No. 38 at 7.] The Court's statement that the "unsophisticated consumer" standard is less stringent than the "least sophisticated consumer" standard applied in *Brown v. Card Serv. Ctr.*, 464 F.3d 450 (3d Cir. 2006), a case relied upon by the Gunns, was meant to convey that it is easier for the language in a collection letter to pass muster, and not violate the FDCPA, when the "unsophisticated consumer" standard is applied, rather than the "least sophisticated consumer" standard. Accordingly, it is a "less stringent" standard, and that is why *Brown* – which applied a "more stringent" standard – is inapposite.